**FEE PAID**

FILED

Julian Brew (SBN 150615)
julian@cypressllp.com
Jared L. Watkins (SBN 300393)
jared@cypressllp.com
**CYPRESS LLP**
11111 Santa Monica Boulevard, Suite 500
Los Angeles, CA 90025
Telephone:   424-901-0123
Facsimile:   424-750-5100

2023 JUL 20 PM 3: 11

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES
BY: _____ **rsm**

Attorneys for Plaintiff-Relator,
**RELATOR LLC**

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **UNITED STATES OF AMERICA,**<br><br>    Plaintiff,<br><br>*ex rel.* **RELATOR LLC**, a California limited liability company,<br><br>    Relator,<br><br>    v.<br><br>**WALTER KENNETH NEIL,** an individual; **BARBARA BOWLES,** an individual; **FRANKLIN LOAN CORPORATION,** a California corporation; and DOES 1-10,<br><br>    Defendants. | Case No. **2:23-CV-05885-RGK-AGRx**<br><br>**COMPLAINT FOR VIOLATIONS OF FEDERAL FALSE CLAIMS ACT**<br><br>**FILED *IN CAMERA* UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)(2)**<br><br><u>**DO NOT PLACE ON PACER**</u><br><br>**JURY TRIAL DEMANDED** |

CYPRESS LLP
11111 Santa Monica Boulevard Suite 500
Los Angeles, California 90025
(424) 901-0123

1       Plaintiff RELATOR LLC ( "Plaintiff") complains of **WALTER KENNETH**

2   **NEIL** ("Neil"), an individual, **BARBARA BOWLES** ("Bowles"), an individual,

3   **FRANKLIN LOAN CORPORATION** ("FLC"), a California corporation, and

4   DOES 1-10 (collectively "Defendants").

5                  **JURISDICTION & VENUE**

6       1.    This Court has subject matter jurisdiction over the Plaintiff's claims

7   brought under the federal False Claims Act ("FCA"), 31 U.S.C. §§ 3279, et seq.,

8   pursuant to 31 U.S.C. §§ 3730 and 3732.

9       2.    This Court has personal jurisdiction over Defendants pursuant to 31

10  U.S.C. § 3732(a) because at all times material hereto, Defendants transacted

11  business and are located in the Central District of California, and acts proscribed by

12  31 U.S.C. § 3729 occurred in this district.[1]

13      3.    Venue is proper in this district pursuant to 31 U.S.C. § 3732(a), and

14  under 28 U.S.C. §§ 1391(b) and 1395(a), because the Defendant's acts that form the

15  basis of this Complaint occurred in the Central District of California. Plaintiff the

16  United States is also located in the Central District of California.

17      4.    Relator's claims and this Complaint are not based upon prior public

18  disclosures of the fraud or transactions in a criminal, civil, or administrative hearing

19  in which the Government or its agent is a party; a congressional, Government

20  Accountability Office, or other federal report, hearing, audit, or investigation; or

21  from the news media. To the extent that there was any public disclosure unknown

22  to Relator, it is the "original source" within the meaning of 31 U.S.C. §

23  3730(e)(4)(B) and/or the public disclosure is a result of Relator voluntarily

24  providing this information to the United States Government prior to filing this *qui*

25  *tam* action.

26

27  [1] FLC operates throughout California, and is headquartered in Palm Desert, California, within to the Central District. FLC has formed an operating entity in California and

28  transacts business in California.

COMPLAINT

## INTRODUCTION AND SUMMARY

5.     In this matter, a mortgage lender used his lending business to misappropriate from the US Federal government's Paycheck Protection Program ("PPP"). To obtain the loan, the Defendants presented many falsified loan documents to the SBA. This fraud scheme drained the PPP, depriving deserving businesses and workers in eligible companies desperately needed aid. Defendants did not need the loan, they simply took advantage: Walter Kenneth Neil's lending business was booming; they had no economic need. This is even assuming the loan proceeds were used to support payroll, as promised by Defendants, which they were not. They did not need the money to begin with, and then the theft was made permanent with loan forgiveness. Doubling down on the scheme, Defendants falsified more documents which were presented to the government to obtain total loan forgiveness, billing millions to the US taxpayer, draining the program of aid funds. Now that program is running dry.

6.     Neil used his mortgage lending business, Franklin Loan Corporation to apply for and receive a PPP loan totaling **$2,605,000.00**, purportedly to cover payroll costs. Yet, FLC and its owner Neil:

a. Falsified loan eligibility;

b. Falsified business type and industry type;

c. Falsified the use of the loans on authorized expenses;

d. Falsified the economic necessity for the loans; and

e. Falsified the need for loan forgiveness.

7.     Many Americans lost their jobs during the pandemic and many small businesses closed, because the PPP money ran out. Many people are still losing their jobs as a result of the Pandemic. At the same time…this company and its executives bilked the PPP for millions of dollars in aid funds. They were not allowed to take this money. They did not need it. They did not return it. They used the money on unauthorized expenses. As a curtain act of corporate greed and

CYPRESS LLP
11111 Santa Monica Boulevard Suite 600
Los Angeles California 90025
(424) 901-0123

1  misappropriation, they obtained total loan forgiveness, billing millions of dollars

2  onto the taxpayers.

3      8.    Obvious Regulations Regarding Money Lenders. FLC was ineligible

4  to obtain the PPP loan because it is a money lending business. While the vast

5  majority of American industries are allowed to take PPP loan, a very few select

6  industries are not allowed. One such type of business is money lenders. The

7  rationale is that money lenders have money on hand to cover their worker costs, and

8  money lenders are not suffering as much as other business types, not to mention

9  going into debt would not be as necessary if businesses could financially survive.

10 FLC has a history of violating regulations regarding money lenders. In 2014, The

11 Consumer Financial Protection Bureau (CFPB) ordered FLC, to pay a $730,000

12 fine resulting from illegal bonuses given to loan officers which preyed upon

13 consumers with high interest rate loans. The Central District of California Federal

14 court approved a consent order requiring FLC to pay the fine and stop its illegal

15 bonus program.

16     9.    Falsified Business Type and Industry Type. In its PPP loan

17 application, FLC lied about its business type and industry type. FLC is a direct

18 mortgage lender. However, in its application it purported to be "Mortgage and

19 Nonmortgage Loan Brokers", which is not its business. FLC is not a Mortgage

20 Broker, they are in fact the Mortgage Lender. It is highly unlikely it would not

21 know its own business, or that it would confuse a critical distinction between being

22 a broker with a lender. FLC falsified its industry type in order to hide the fact that it

23 is a direct money lender and are specifically disallowed from applying. Even taken

24 alone this incorrect self-reported classification is probably a deception rather than a

25 mistake. The CEO founded the company and is well versed in the fields of lending

26 and banking, which are the words they used to describe themselves on their own

27 website. Furthermore, on FLC's own Articles of Incorporation with the California

28 Secretary of State it lists their business type as "Mortgage Bank." Taken by itself,

CYPRESS LLP
11111 Santa Monica Boulevard Suite 800
Los Angeles, California 90025
(424) 901-0123

1   this incorrect reporting is likely fraud. But taken in the context of the other

2   incorrect information provided, it is evident that Neil and his company understood

3   they were involved in fraud and orchestrated its various components deliberately.

4       10.   Use of PPP Funds on Unauthorized Items. In the months that followed

5   the PPP loans, Defendants used the fund, but not all on allowable payroll costs. The

6   payroll amounts were beyond what is allowed in order to receive a bigger loan.

7   Discovery will reveal exactly where the money was used, but ultimately it does not

8   matter. At the very least it was spent on unauthorized payroll expenses which break

9   the PPP rules. At the worst the money was spent on things not even related to

10  payroll. Although the theft of public money is worse when used on business

11  expenses which are not disclosed or authorized, or even personal items, any

12  expenditure beyond the cap was prohibited. However, ultimately any and all use of

13  the money was unauthorized, because the loan itself was not allowed to begin with.

14  Defendants are in a prohibited industry. Not a dollar of these precious and scarce

15  loans was meant FOR THEM. It was all ill-gotten money. Funding a luxury

16  spending spree with American tax dollars being squandered to subsidize the already

17  opulent lifestyle of an unscrupulous businessman, adds insult to injury. The

18  American people have a right to be angry.

19             PPP funds are:

20             NOT authorized for direct lenders;

21             NOT authorized for a business which has no economic need for the

22             loan;

23             NOT authorized for a business to use the loan for expenses of a

24             different company;

25             NOT authorized for owner draws or distributions; and

26             NOT authorized for businesses or individuals who fraudulently submit

27             applications and supporting documents.

28

4

COMPLAINT

11.     <u>No Economic Necessity and Mortgage-Backed-Securities (MBS)</u>. The PPP was made to help struggling businesses pay their workers. It is not a free excuse to raid government coffers by wealthy and cunning businessmen. FLC did not need the loans – there was no "need" or "economic necessity" to pay Defendant's payroll expenses.[2] FLC did not and cannot show any decline in revenue during the pandemic. In fact, during this time period, mortgage lenders experienced record profits. This is because of the housing price increases and housing crisis. It is also because of the Federal government's policy to purchase Mortgage Backed-Securities (MBS), which provided mortgage lenders like FLC a steady source of high income.[3]

12.     <u>Indeed,</u> FLC was highly profitable when they took the loan in 2020. They were also highly profitable in 2021 when they asked for loan forgiveness. FLC currently has upwards of $38.8 million in annual revenue. To achieve this current level of revenue, FLC required large capital sources in 2020 to make the many millions of dollars in loans from which it is now reaping interest income. At the time of the loans FLC had tens of millions if not hundreds of millions of dollars in capital. Yet Defendant falsely certified it had "economic uncertainty" so it could take financial assistance from the US taxpayer. However, in 2020 FLC was "happy to announce" it had won the Desert Sun Newspaper's 'Best Mortgage Lender' from Best of Desert 2020. Additionally, throughout 2020 FLC's social media is filled with posts celebrating record closings. FLC did not need the money. Defendants took advantage of the opportunity and used it as a windfall.

---

[2] FLC is not a small business in dire financial straits, but rather a well-financed finance company. Public information shows their revenue was not declining, and their own statements indicate massive growth and profits. Defendant cannot show "economic necessity" in needing the loans to continue business operations.

[3] Agency MBS purchases are issued by the Federal government. The US Federal Reserve has a $1.25 trillion program to purchase mortgages which was restarted on March 15. 2020 as a result of the COVID-19 crises. This program  provided mortgage lenders with a guaranteed way to sell their mortgage assets. Mortgage lenders like Defendant benefited greatly from this program.

COMPLAINT

13.     In 2020 and in 2021, the exact same time period of the loans, FLC actually expanded its business. It was not in financial trouble. Especially in any financial trouble which jeopardized its payroll or ability to make rent. It was quite the opposite. For example, between 2020 and 2021, after FLC received its PPP loans it opened 5 new branches in Hawaii, Nebraska, New Jersey, Texas, and North Carolina.

14.     <u>Direct Lending</u>. FLC was <u>ineligible</u> to receive any SBA loans whatsoever. While almost every industry type is allowed to take PPP loans, a very few select number of industries are not permitted, including mortgage lenders like FLC. The rationale is that money lenders are cash rich and have ample financial resources to pay their own payroll expenses, therefore they should not take away money from small businesses which don't have ready access to liquid funds. The Defendant's business makes it ineligible for SBA loans because it is a **money lender**.[4] FLC is a direct lender that provides money loans to consumers, for mortgages. FLC's own website touts its various loan products. It proudly and repeatedly refers to itself as a bank and mortgage lender. However, on its application it excludes any mention of its banking and lending activities. Therefore, Defendant's certification was false because **they <u>most definitely are</u> the type of business/industry which is prohibited from SBA loans**.

15.     <u>Money Not Returned</u>. The loan was taken by a business which was not allowed to take even one penny in loans, let alone millions of dollars. The **$2,605,000.00** in funds should have been returned immediately. These loans should never have been sought in the first place. Yet the Defendants went further by obtaining total loan forgiveness, billing the US taxpayers millions of dollars. *Defendants have not returned the loan proceeds*.

16.     <u>Further Falsification on Loan Forgiveness</u>. Defendants falsified further documents to receive loan forgiveness, foisting the costs on the American taxpayer

---

[4] The Defendant is a direct lender. They specialize in home mortgage loans.

CYPRESS LLP
11111 Santa Monica Boulevard Suite 500
Los Angeles, California 90025
(424) 901-0123

1    while depriving small businesses and their employees funding to stay open and

2    working. Defendants had to attest as to the use of the funds and the amount used on

3    authorized purposes. The loan could not have been used on authorized purposes

4    because FLC could not comply with the requirements of forgiveness given its

5    business type. So Defendants also lied on their forgiveness documents and

6    application.

7        17.    <u>Defendant's False Statements and Fraud</u>. Defendants knowingly and

8    intentionally made many materially false statements to the government and bank to

9    obtain the loans.

10       18.    Plaintiff brings this action as relator on behalf of the United States to

11   recover treble damages, civil penalties, and costs under the False Claims Act

12   ("FCA"), 31 U.S.C. §§ 3729-33.  Plaintiff gave notice of its intent to file and full

13   disclosure of the evidentiary basis to the Department of Justice ("DOJ").

**THE PARTIES**

15       19.    Plaintiff is a California limited liability company with its principal

16   place of business in Los Angeles, California.

17       20.    Defendant Neil is an individual and, at all relevant times herein, is and

18   was the Chief Executive Officer of FLC.

19       21.    Defendant Bowles is an individual and, at all relevant times herein, is

20   and was the Chief Financial Officer of FLC.

21       22.    Defendant FLC is a California corporation formed in 1989 with its

22   principal place of business, 44800 Village CT Palm Desert, CA 92260.

23       23.    FLC is a mortgage lender which directly provides: Conventional,

24   Jumbo, Government, and Non-Qualifying money loans to people in return for an

25   ownership interest in their homes.

26       24.    The true names and capacities, whether individual, partner, associate,

27   corporate or otherwise, of Defendant DOES 1 through 10, inclusive, and each of

28

COMPLAINT

1  them, are unknown to Plaintiff, who therefore sues said Defendant(s) by such

2  fictitious names. Plaintiff is informed and believes and thereon alleges that each

3      25.    Defendant designated herein as a "DOE" is legally responsible in some

4  manner for the events and happenings herein mentioned. Plaintiff will seek leave of

5  Court to amend this Complaint to reflect the true names and capacities of said

6  DOES, and add appropriate charging allegations against said DOES when their

7  identities have been ascertained. Plaintiff is informed and believes that each of the

8  DOE Defendants were responsible in some manner for the injuries and damages

9  alleged herein, and/or for the wrongful acts of some or all of the Defendants.

10  Plaintiff is further informed and believes that each of the Defendants whether

11  specifically named or named as a DOE, was an agent, employee, servant and/or

12  representative of each of the remaining Defendants, and, in doing or failing to do

13  the things alleged herein, was acting within the course and scope of said agency,

14  employment, service and/or representation.

15      26.    Plaintiff is further informed and believes that each of the Defendants,

16  whether specifically named herein or named as a DOE, approved, ratified, and/pr

17  acquiesced in the acts and omissions of each of the remaining Defendants.

18      27.    Plaintiff is further informed and believes that each of the Defendants

19  herein, whether named as DOES or otherwise, acted in concert, agreement and

20  conspiracy with the other Defendants for the common purpose of engaging in a

21  scheme to defraud as alleged below.

22      **THE CARES ACT AND PAYCHECK PROTECTION PROGRAM**

23      28.    On March 27, 2020, the Coronavirus Aid, Relief, and Economic

24  Security Act ("the CARES Act" or "the Act") (Pub. L. 116-136) became law and

25  provided emergency assistance and health care response for eligible individuals,

26  families, and businesses affected by the coronavirus pandemic. SBA received

27  funding and authority through the Act to modify existing loan programs and

28

CYPRESS LLP
11111 Santa Monica Boulevard Suite 800
Los Angeles, California 90025
(424) 901-0123

8

COMPLAINT

1 establish a new loan program to assist small businesses nationwide adversely

2 impacted by the COVID-19 emergency.

3     29.    The CARES Act authorized loans to eligible small businesses

4 struggling to pay employees and stay in business as a result of the devastating effect

5 of the COVID-19 pandemic and resulting restrictions.

6     30.    Section 1102 of the CARES Act temporarily permitted the SBA to

7 guarantee 100 percent of 7(a) loans under a new program titled the "Paycheck

8 Protection Program" ("PPP").

9     31.    On April 24, 2020, the Paycheck Protection Program and Health Care

10 Enhancement Act (Pub. L. 116-139) was enacted to provide additional funding and

11 authority for the PPP. On June 5, 2020, the Flexibility Act of 2020 (Flexibility Act)

12 (Pub. L. 116-142) was enacted, changing key provisions of the PPP, including

13 provisions relating to the maturity of PPP loans, the deferral of PPP loan payments,

14 and the forgiveness of PPP loans.

15     32.    Under the PPP, in 2020, eligible businesses could obtain one SBA

16 guaranteed PPP loan. Businesses were required to spend all loan proceeds only for

17 employee compensation, rent or mortgage, and certain other specified expenses.

18 Depending on their use of the loan proceeds as certified, they could qualify for loan

19 forgiveness, up to the full amount of the loan.

20     33.    The SBA delegated authority to third-party lenders to underwrite and

21 approve the PPP loans. In order to obtain a PPP loan, whether a "First Draw" or

22 "Second Draw" loan, an eligible business (through its authorized representative)

23 had to sign and submit a PPP loan application (SBA Form 2483) online through the

24 lender's platform. The PPP loan application (SBA Form 2483) required the

25 business (through its representative) to acknowledge the PPP program rules and

26 make certain certifications in order to be eligible to obtain the PPP loan, including

27 certifying that their certifications were true.

28

CYPRESS LLP
11111 Santa Monica Boulevard Suite 600
Los Angeles California 90025
(424) 961-6123

34.    Once the Borrower submitted its PPP loan application (SBA Form 2483) to a Lender, the participating lender processed the PPP loan application. If a PPP loan application (SBA Form 2483) was approved by the lender, it funded the PPP loan with its own funds, which were 100% guaranteed by the SBA.

35.    After the Lender processed and approved a borrower's PPP loan application (Form 2483), but prior to the closing of the PPP loan, the Lender submitted to the SBA, the Lender's Application - Paycheck Protection Program Loan Guaranty (SBA Form 2484) to the SBA applying for a guarantee on the loan. For a PPP loan to be approved, the Lender was required to Answer Yes to the following questions in the Lender's Application - Paycheck Protection Program Loan Guaranty (SBA Form 2484) as to the Borrower's certification of its General Eligibility to receive a PPP Loan:

| | | Yes | No |
|---|---|---|---|
| • | The Applicant has certified to the Lender that (1) it was in operation on February 15, 2020, has not permanently closed, and was either an eligible self-employed individual, independent contractor, or sole proprietorship with no employees or had employees for whom it paid salaries and payroll taxes or paid independent contractors, as reported on Form(s) 1099MISC; (2) current economic uncertainty makes this loan request necessary to support the ongoing operations of the Applicant; (3) the funds will be used to retain workers and maintain payroll, or make payments for mortgage interest, rent, utilities, covered operations expenditures, covered property damage costs, covered supplier costs, and covered worker protection expenditures; and (4) the Applicant has not and will not receive another loan under the Paycheck Protection Program, section 7(a)(36) of the Small Business Act (15 U.S.C. 636(a)(36)) (this does not include Paycheck Protection Program second draw loans, section 7(a)(37) of the Small Business Act (15 U.S.C. 636(a)(37)). | ☐ | ☐ |

CYPRESS LLP
11111 Santa Monica Boulevard Suite 600
Los Angeles, California 90025
(424) 901-0123

SBA Form 2484 (emphasis added). Therefore, if a PPP borrower lied on its PPP loan application (SBA Form 2483), the PPP borrower's false certification caused the Lender to submit to the SBA with respect to that PPP Loan, a Lender's Application - Paycheck Protection Program Loan Guaranty (SBA Form 2484) that contained the PPP borrower's False Statement.

36.    SBA Form 2483 includes the following certification, among others: "I have read the statements included in this form, including the Statements Required by Law and Executive Orders, and I understand them" (the "Understanding Certification").

37.    SBA Form 2483 also includes the following certification, among others: "The Applicant is eligible to receive a loan under the rules in effect at the time this application is submitted that have been issued by the Small Business Administration (SBA) implementing the Paycheck Protection Program under Division A, Title I of the Coronavirus Aid, Relief, and Economic Security Act (CARES Act) (the Paycheck Protection Program Rule)" (the "Eligibility Certification").

38.    SBA Form 2483 also includes the following certification, among others: "All SBA loan proceeds will be used only for business-related purposes as specified in the loan application and consistent with the Paycheck Protection Program Rule" (the "Use of Proceeds Certification").

39.    SBA Form 2483 also includes the following certification, among others: "Current economic uncertainty makes this loan request necessary to support the ongoing operations of the Applicant" (the "Economic Necessity Certification").

40.    SBA Form 2483 also includes the following certification, among others: "The funds will be used to retain workers and maintain payroll or make mortgage interest payments, lease payments, and utility payments, as specified under the Paycheck Protection Program Rule; I understand that if the funds are knowingly used for unauthorized purposes, the federal government may hold me

1  legally liable, such as for charges of fraud" (the "Worker Retention and Payroll
2  Certification").

3      41.    SBA Form 2483 also includes the following certification, among
4  others: "During the period beginning on February 15, 2020 and ending on
5  December 31, 2020, the Applicant has not and will not receive another loan under
6  the Paycheck Protection Program." (the "Single Loan Certification").

7      42.    SBA Form 2483 also includes the following certification, among
8  others: "I further certify that the information provided in this application and the
9  information provided in all supporting documents and forms is true and accurate in
10 all material respects. I understand that knowingly making a false statement to obtain
11 a guaranteed loan from SBA is punishable under the law, including under 18 USC
12 1001 and 3571 by imprisonment of not more than five years and/or a fine of up to
13 $250,000; under 15 USC 645 by imprisonment of not more than two years and/or a
14 fine of not more than $5,000; and, if submitted to a federally insured institution,
15 under 18 USC 1014 by imprisonment of not more than thirty years and/or a fine of
16 not more than $1,000,000" (the "No False Statements Certification").

17     43.    After the borrower submitted a PPP loan application, it was processed
18 by the participating lender. If the PPP loan application was approved, the
19 participating lender funded the loan using its own monies, which were then
20 guaranteed by the SBA. Generally, in the event the borrower defaulted on a PPP
21 loan, the SBA would purchase the borrower's debt from the lender and be
22 responsible for its repayment.

23     44.    Under applicable SBA rules and guidance, recipients of PPP loans
24 could apply to have principal and interest on the PPP loan fully forgiven, meaning
25 that the borrower would owe nothing and would have no obligation to repay the
26 PPP loan. To obtain full forgiveness of the PPP loan, borrowers had to attest that
27 they had "not reduced the number of employees or the average paid hours of [their]
28 employees" during the loan period, that the loan proceeds had been spent on payroll

costs and other permitted expenses and that at least 60% of the loan proceeds had been spent on payroll costs (hereafter the "Loan Forgiveness Certification").

45.    Loans could only be used for certain permitted expenses, such as to pay employees' salaries, employee benefits, mortgage interest, rent, utilities or worker protection costs related to COVID19.

46.    More specifically, the loan forgiveness application (SBA Form 3508), revised as of July 30, 2021, included the following certifications, among others:

(1)    The dollar amount for which forgiveness is requested:

- was used to pay costs that are eligible for forgiveness (payroll costs to retain employees; business mortgage interest payments; business rent or lease payments; or business utility payments);

- includes all applicable reductions due to decreases in the number of full-time equivalent employees and salary/hourly wage reductions;

- includes payroll costs equal to at least 60% of the forgiveness amount;

- if a 24-week Covered Period applies, does not exceed 2.5 months' worth of 2019 compensation for any owner-employee or self-employed individual/general partner, capped at $20,833 per individual; and

- if the Borrower has elected an 8-week Covered Period, does not exceed 8 weeks' worth of 2019 compensation for any owner-employee or self-employed individual/general partner, capped at $15,385 per individual.

(2)    I understand that if the funds were knowingly used for unauthorized purposes, the federal government may pursue recovery of loan amounts and/or civil or criminal fraud charges.

CYPRESS LLP
11111 Santa Monica Boulevard Suite 500
Los Angeles, California 90025
(424) 901-0123

13
COMPLAINT

(3)    The Borrower has accurately verified the payments for the eligible payroll and nonpayroll costs for which the Borrower is requesting forgiveness.

(4)    The Borrower's eligibility for loan forgiveness will be evaluated in accordance with the PPP regulations and guidance issued by SBA through the date of this application.

47.    13 CFR§ 120.110 provides a list of what type of business are INELIGIBLE for SBA loans. This list includes lenders like Defendant …

**"(b) Financial businesses primarily engaged in the business of lending, such as banks, finance companies, and factors (pawn shops, although engaged in lending, may qualify in some circumstances)"**

48.    On April 2, 2020, the SBA posted the First PPP Interim Final Rule announcing the implementation of the CARES Act. SBA posted additional interim final rules on April 3, 2020, and April 14, 2020. On April 28, 2020, SBA posted an interim final rule supplementing the previously posted interim final rules with additional guidance. See, Federal Register / Vol. 85, No. 82 / Tuesday, April 28, 2020 / Rules and Regulations at, 23450-52, available at https://home.treasury.gov/system/files/136/Interim-Final-Rule-on-Requirements-for-Promissory-Notes-Authorizations-Affiliation-and-Eligibility.COMMERCE. This interim final rule supplemented previous regulations and guidance on several important, discrete issues. The April 28, 2020, Interim Final Rule was immediately effective without advance notice and public comment because section 1114 of the CARES Act authorized SBA to issue regulations to implement Title I of the CARES Act without regard to notice requirements. Id.

/ / /

/ / /

/ / /

49.     With respect to the PPP, the January 6, 2021, Interim Final Rule provided Clarification Regarding Eligible Businesses, specifically 13 CFR Parts 113, 120 and 121.

*"Are businesses that are generally ineligible for 7(a) loans under 13 CFR120.110 eligible for a PPP loan?"*

**Paragraphs (a), (g), and (k), of 13 C.F.R. 120.110 do not apply to PPP loans. For PPP loans, the ineligibility restriction in 13 C.F.R. 120.110(n) is superseded by subsection B.2.a.iii. of this interim final rule. Otherwise, a business is not eligible for a PPP loan if it is a type of business concern (or would be, if the entity were a business concern) described in 13 C.F.R. 120.110, except as permitted by subsections B.1.d and B.1.g of this rule or otherwise permitted by PPP rules. Businesses that are not generally eligible for a 7(a) loan under 13 C.F.R. 120.110 are described further in SBA's Standard Operating Procedure (SOP) 50 10 6, Part 2, Section A, Chapter 3.**

/ / /
/ / /
/ / /

CYPRESS LLP
11111 Santa Monica Boulevard Suite 500
Los Angeles, California 90025
(424) 961-6122

15
COMPLAINT

50.    The SBA's Standard Operating Procedure (SOP) 50 10 6, Part 2,
Section A, Chapter 3 states as follows:

### CHAPTER 3: INELIGIBLE BUSINESSES

#### A. TYPES OF INELIGIBLE BUSINESSES

The SBA Lender must determine whether the Applicant is one of the types of businesses listed as
ineligible in SBA regulations (13 CFR § 120.110). Certain business types appearing on this list
may be eligible under limited circumstances, as discussed below.

1. Businesses organized as non-profit businesses are ineligible (for-profit subsidiaries may
   be eligible). 13 CFR § 120.110 (a)

2. Businesses Engaged in Lending 13 CFR § 120.110 (b).

   a. SBA cannot guarantee a loan that provides funds to businesses primarily engaged
      in lending, investment, or to an otherwise eligible business engaged in financing,
      factoring, or investment not related or essential to the business. This prohibits
      SBA Loans to:

      i.   Banks;

      ii.  Life Insurance Companies (but not independent agents);

      iii. Finance Companies;

      iv.  Factoring Companies;

      v.   Investment Companies;

      vi.  Bail Bond Companies; and

      vii. Other businesses whose stock in trade is money.

   b. The limited circumstances under which certain businesses engaged in lending
      may be eligible are as follows:

      i.   A pawn shop that provides financing is eligible if more than 50% of its
           revenue for the previous year was from the sale of merchandise rather than
           from interest on loans.

      ii.  A business that provides financing in the regular course of its business (such
           as a business that finances credit sales) is eligible, provided less than 50% of
           its revenue is from financing its sales.

      iii. A mortgage servicing company that disburses loans and sells them within 14
           calendar days of loan closing is eligible. Mortgage companies primarily
           engaged in the business of servicing loans are eligible. Mortgage companies
           that make loans and hold them in their portfolio are not eligible.

      iv.  A check cashing business is eligible if it receives more than 50% of its
           revenue from the service of cashing checks.

Effective October 1, 2020                                                    Page 141

### DEFENDANTS' FRAUD

51.    During round 1 of the paycheck protection program, Defendant FLC
applied for a PPP loan for **$2,605,000.00**. It was approved on April 14, 2020, by the

CYPRESS LLP
11111 Santa Monica Boulevard Suite 600
Los Angeles, California 90025
(424) 901-0123

16

COMPLAINT

1  SBA for the full amount, which was disbursed. The loan was facilitated by Pacific

2  Western Bank. Defendant received 100% of the approved amount. On its

3  application for this loan, Defendant stated that it had 143 employees for which it

4  needed the loan. This loan was forgiven on June 24, 2021.

5      52.    FLC admits to being a direct lender on its website, and through its

6  licensure and public statements about its products, yet not on its PPP loan

7  application and supporting documents. FLC is expressly prohibited from receiving

8  SBA loans, including PPP loans. FLC's CEO, Neil, is a sophisticated, experienced

9  businessman. He knew about the restrictions. The legal and financial experts he has

10  hired over the years would have known this. Neil intentionally broke these clear

11  rules knowing what he was doing. He has navigated the highly regulated business of

12  lending for decades since founding the company. He has successfully expanded the

13  mortgage company and would have had to manage and investigate the many

14  regulations encountered along the way. He would have quickly discovered that

15  these loans were not permitted, especially given the amounts involved and the

16  expertise and capabilities of the people working in his company.

17      53.    In addition to applying any applicable business type ineligibility rules,

18  all borrowers should carefully review the required Economic Certainty certification

19  on the Borrower Application Form  stating that ''[c]urrent economic uncertainty

20  makes this loan request necessary to support the ongoing operations of the

21  Applicant.''

22      54.    There are many kinds of fraudulent actors. While some are

23  opportunistic lone operators, making up businesses or bands of hucksters

24  manufacturing many fake payroll accounts, the CEO fraudster is among the most

25  dangerous and harmful. If a CEO decides to break the law with or without the

26  consent of their company, they might be able to use their advanced knowledge of

27  business and considerable professional acumen to great effectiveness, maximize

28  fraud, far beyond the abilities of the average fraudster. If the company is also

complicit, this makes the fraud even more effective and difficult to detect. The problems of CEO and corporate fraud are very detrimental to the PPP, and the extent of the damage done may only just be starting to reveal itself. Part of the reason is that they did more damage, and were able to conceal it better.

55.    FLC abused the PPP program, from misrepresenting its economic need for the loan to willfully ignoring its ineligibility, to maximizing the amount of the loan and then obtaining loan forgiveness. Discovery will reveal where the millions in PPP funds were actually spent, but what is obvious is that Defendants *did not need any money from US taxpayers*. The business was lending other people money. FLC is and was highly profitable during the pandemic, just like most in their industry. FLC did not suffer any business loss and certainly had the money to pay their own worker wages. Their "stock in trade" is money and business was booming.

**DEFENDANTS' FALSE STATEMENTS AND MISUSE OF PROCEEDS**

56.    Defendants signed the loan applications, thereby endorsing the Understanding Certification, which means that they agreed that they understood the rules and guidelines of the PPP, including, without limitation the rules regarding use of proceeds and the certifications made.

57.    The proceeds of the PPP Loans were not and could not have been used only for authorized purposes consistent with the PPP Rule, because, among other things, the Defendant was obviously not allowed to take PPP loans because of their industry type - money lenders. Therefore, when Defendants made the Use of Proceeds Certification, the certification was false.

58.    The proceeds of the PPP Loans were not necessary to support the ongoing operations of FLC. The company's enjoyed record high business achievements since 2020 until today. It is no secret that mortgage lenders, like the Defendants' were highly profitable during the housing market price increases and high demand in 2020 and 2021. This company had considerable financial resources

CYPRESS LLP
11111 Santa Monica Boulevard Suite 600
Los Angeles California 90025
(424) 901-0123

1   to pay its own workers, assuming that is where the money was spent rather than

2   into the pocket of the CEO and its executives. Therefore, when Defendants made

3   the Economic Necessity Certification, the certification was false.

4       59.    The PPP loan money was only allowed to be used on authorized

5   expenses. The proceeds of the PPP Loan were not permitted to be used to pay

6   business costs for a business in the lending industry, therefore when Defendant

7   made the Worker Retention and Payroll Certification, the certification was false.

8       60.    By virtue of the above false statements, when Defendants made the No

9   False Statements Certification, that certification was false.

10      61.    The Defendants actively pursued and obtained loan forgiveness.

11  Because FLC is prohibited from obtaining any PPP loans, its representation on its

12  forgiveness application that it spent 100% of the loan proceeds on eligible expenses

13  was not truthful. The SBA would not have forgiven the loans if they knew

14  Defendants' certifications described above were false. They also would not have

15  forgiven he loans if they knew the proceeds had been used to increase profits

16  instead of paying their employees.

17      62.    As a result of the forgiveness, Defendants have not repaid the loan and

18  have kept the proceeds, and the loan has been repaid with money from taxpayers,

19  including the small businesses and owners who were supposed to receive the PPP

20  funds instead of repaying a profitable mortgage lender's loan that it never should

21  have received, let alone had forgiven.

22                      **THE FALSE CLAIMS ACT**

23      63.    The False Claims Act prohibits fraudulent conduct in connection with

24  federal programs, including the knowing submission of false claims for payment to

25  the government. See 31 U.S.C. § 3729(a)(1)(A). In these circumstances, liability

26  may attach if the omission renders those representations misleading. 41. 31 U.S.C.

27  § 3729(a)(1)(A) and (B) of the FCA provide that:

28          (1) . . . any person who—

CYPRESS LLP
11111 Santa Monica Boulevard Suite 600
Los Angeles, California 90025
(424) 901-0123

1    (A) knowingly presents, or causes to be presented, a false or fraudulent

2  claim for payment or approval; [or]

3    (B) knowingly makes, uses, or causes to be made or used, a false

4  record or statement material to a false or fraudulent claim,

5    . . .

6    (G) knowingly makes, uses, or causes to be made or used, a false

7  record or statement material to an obligation to pay or transmit money or property

8  to the Government, or knowingly conceals or knowingly and improperly avoids or

9  decreases an obligation to pay or transmit money or property to the Government, is

10  liable to the United States Government . . .

11    31 U.S.C. § 3729(a)(1)(A), (B), and (G) (2020).

12    42. The scope of a false or fraudulent claim is to be broadly construed.

13  As used in the FCA, a "claim"

14    (A) means any request or demand, whether under a contract or

15  otherwise, for money or property and whether or not the United States has title to

16  the money or property, that—

17    (i) is presented to an officer, employee, or agent of the United States;

18  or

19    (ii) is made to a contractor, grantee, or other recipient, if the money or

20  property is to be spent or used on the Government's behalf or to advance a

21  Government program or interest, and if the United States Government—

22    (I) provides or has provided any portion of the money or property

23  requested or demanded; or

24    (II) will reimburse such contractor, grantee, or other recipient for any

25  portion of the money or property which is requested or demanded; . . .

26    31 U.S.C. § 3729(b)(2) (2020).

27    64.    A person who violates the False Claims Act during the time period at

28  issue "is liable for a civil penalty as adjusted, plus 3 times the amount of damages

20

COMPLAINT

which the United States Government sustains because of the act of that person." 31 U.S.C. § 3729(a). See 28 C.F.R. § 85.3(a)(9); Department of Justice, 28 CFR Part 85, Civil Monetary Penalties Inflation Adjustments for 2022 published at: https://www.govinfo.gov/content/pkg/FR-2022-05-09/COMMERCE/2022-09928.COMMERCE.

## FIRST CAUSE OF ACTION

### FALSE OR FRAUDULENT CLAIMS (31 U.S.C. § 3729.(a)(1)(A-B))

65.    Plaintiff alleges and incorporates by reference each and every allegation contained in all prior paragraphs of this complaint.

66.    This is a claim for treble damages and penalties under the False Claims Act, 31 U.S.C. § 3729, et seq., as amended.

67.    By virtue of the acts described above, Defendants knowingly presented, or caused to be presented, to an officer or employee of the United States government, false or fraudulent claims for payment or approval, in violation of the FCA, 31 U.S.C. § 3729(a)(l)(A). Specifically, each of Defendants' Economic Necessity, No False Statements, Eligibility, Use of Proceeds, Understanding, Worker Retention and Payroll Certifications described above all were knowingly false, and relied upon by lenders and the SBA in approving the PPP Loans. Their request for forgiveness contained a further misrepresentation that the loans had been used only for authorized purposes.

68.    By virtue of the acts described above, Defendants knowingly made or used, or caused to be made or used, false or fraudulent records or statements material to false or fraudulent claims for payment by the Government.

69.    The Government and its agents and contractors relied on those false statements in approving and making the loans and subsequently forgiving them, leaving the burden of repayment on taxpayers.

70.    Because of the Defendants' acts, the United States sustained damages in an amount to be determined at trial and, therefore, is entitled to treble damages

1  under the FCA, plus civil penalties of not less than $12,537.00 and not more than

2  $25,076.00 for each and every violation arising from Defendants' unlawful conduct

3  alleged herein, and attorneys' fees in an amount to be proven.

4  **CONCLUSION**

5      71.    Neil and his company abused the PPP. They abused the American

6  public. But they did it with the ecumenical prowess of their sophisticated

7  corporations. Corporate abuse of the PPP, while uncommon, has devastated the

8  PPP's ability to help small businesses who actually need the money. The PPP was

9  not meant as a gravy train for opportunistic CEOs. It was not meant as a way for

10  aggressive executives to make their board happy. The PPP was meant for struggling

11  businesses. Now that program is dry. The American people have a right to ask for

12  reconciliation.

CYPRESS LLP
11111 Santa Monica Boulevard Suite 500
Los Angeles, California 90025
(424) 901-0123

13

14

15

16

17

18

19

20

21

22

23

24

25

26  / / /

27  / / /

28  / / /

COMPLAINT

**PRAYER FOR RELIEF**

WHEREFORE, qui tam Plaintiff/Relator prays for judgment against Defendants, as follows:

1. That this Court enter judgment against each Defendant in an amount equal to three times the damages that the United States has sustained because of Defendants' action, plus a civil penalty of not less than $12,537.00 and not more than $25,076.00 for each and every false claim as are required by law, together with all such further relief as may be just and proper.

2. Such other relief as this Court may deem just and proper, together with interest and costs of this action.

3. Reasonable attorney fees, litigation expenses, and costs of suit.

**JURY DEMAND**

Plaintiff demands a trial by jury on all issues so triable.

Dated: July 20, 2023                    CYPRESS LLP


                                  By:   /s/ Julian Brew

                                        JULIAN BREW
                                        JARED L. WATKINS
                                        Attorneys for Plaintiff-Relator
                                        RELATOR LLC

23
COMPLAINT